UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Erika Corman,

Plaintiff,

v.

Relax Saunas,

Defendant.

Case No. 3:24-cv-2191

MEMORANDUM OPINION
AND ORDER

## I. Introduction

Defendant Relax Saunas moved to transfer this case to the Southern District of Ohio, Eastern Division at Columbus, pursuant to 28 U.S.C. § 1404(a). (Doc. No. 14). Plaintiff Erika Corman filed a response in opposition, (Doc. No. 15), and Defendant filed a reply. (Doc. No. 16). For the reasons stated below, I grant Defendant's motion.

## II. Background

Erika Corman was employed by Defendant, a company headquartered in Columbus, Ohio, in several capacities during multiple nonconsecutive periods. (*See* Doc. No. 11 at 3-4). For much of her tenure, her roles required her to be based in various states. (*See* Doc. No. 14 at 7-8). From November through December 14, 2023, she was stationed in Orlando, Florida. (*Id.* at 7). She then relocated to Phoenix, Arizonia, where she remained from December 14 through February 15, 2024. (*Id.* at 8). Next, Corman moved to Las Vegas, Nevada, performing her duties there until April 1,

2024, before relocating to Toledo, Ohio. (*Id.*). She worked remotely from Toledo until her termination in August 2024. (*Id.*).

Corman alleges that she regularly worked more than 40 hours per week, but Defendant improperly classified her as exempt from the Fair Labor Standards Act's overtime requirements. (Doc. No. 11 at 4). As a result, Defendant allegedly failed to lawfully compensate her for those overtime hours. (*Id.*).

Corman contends that beginning in February 2024, Defendant's marketing director, Nick Mitchell, repeatedly subjected her to unwelcome sexual advances. (*Id.* at 4-5). According to Corman, Mitchell became hostile after she rejected those advances. (*Id.* at 5). She alleges that, beginning in June 2024, Mitchell excluded her from important meetings, withheld resources she needed to perform her job, and encouraged her coworkers to also exclude her from meetings and treat her with hostility. (*Id.*). She asserts that she reported Mitchell's discriminatory and hostile behavior to Defendant's president, who failed to take appropriate remedial action. (*Id.* at 2, 11). Instead, Corman alleges Defendant terminated her employment in retaliation. (*Id.* at 2, 11).

Corman asserts Defendant violated the FLSA by misclassifying her as an exempt employee and failing to pay her overtime compensation. (*Id.* at 8). She further alleges that Defendant violated Title VII by maintaining a hostile work environment, terminating her because of her sex, and retaliating against her for reporting Mitchell's alleged harassment. (*Id.* at 9-13). She seeks compensation for her unpaid overtime, as well as liquidated and punitive damages. (*Id.* at 13).

Defendant argues that the Northern District of Ohio is an inconvenient forum and now moves to transfer this action to the Southern District of Ohio under 28 U.S.C. § 1404(a). (Doc. No. 14).

## III. Standard

When a civil action is filed in a proper venue, 28 U.S.C. § 1404(a) permits the court to transfer that action to another federal district or division. *See Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980). That statute permits "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Thus, when deciding whether to transfer an action to another district, the transferring court must first consider "whether the action might have been brought in the transferee district." *First Fin. Bank v. Knapschaefer*, 697 F. Supp. 3d 733, 736 (N.D. Ohio 2023) (citation and quotation marks omitted). If that question is answered affirmatively, the court must then conduct "an 'individualized, case-by-case consideration of convenience and fairness' which seeks to determine whether, based on various private and public interests, litigating the plaintiff's action in her chosen forum would be 'unnecessarily burdensome.'" *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp. 3d 759, 775 (S.D. Ohio 2022) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (further quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964))), and *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016). District courts have broad discretion to decide whether to transfer a case to another district. *Mead Data Ctr., Inc., v. W. Pub. Co.*, 679 F. Supp. 1455, 1465 (S.D. Ohio 1987) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

"[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart*, 487 U.S. 22 at 30). Relevant considerations include:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Zimmer Enters., Inc. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2001) (quoting *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 96 (E.D. Mich. 1991)). Courts also consider:

> (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties have agreed to a forum selection clause.

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 406 F. Supp. 2d 751, 755 (E.D. Ky. 2005) (citation and quotation marks omitted).

No single factor controls the analysis. *See Picker Int'l, Inc. v. Travelers Indem. Co.,* 35 F. Supp. 2d 570, 572 (N.D. Ohio 1998). And the court need not consider every factor. *See Stewart*, 487 U.S. 22 at 29 (further citation and quotation marks omitted). The party seeking transfer bears the burden of showing transfer is warranted. *See Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 618 n.2 (6th Cir. 2025).

## IV. ANALYSIS

The parties dispute whether the following factors favor transfer: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the locus of operative facts; (5) the location of evidence; and (6) the respective forums' interest in resolving the controversy. (Doc. No. 14 at 12-13); (Doc. No. 15).

### A. DISTRICT WHERE THE ACTION MIGHT HAVE BEEN BROUGHT

As a threshold matter, I must first consider whether Corman could have brought this action in the Southern District of Ohio. The parties do not dispute that she could have done so, and I support that conclusion.

To determine whether an alternative venue is a district or division where the action might have been brought courts will consider "(1) whether [the proposed alternative venue] could exercise original jurisdiction over the case; (2) whether that court would have personal jurisdiction of the defendants; and (3) whether venue would be proper in that court." *Zimmer*, 478 F. Supp. 2d at 990 (citation omitted).

Here, the Southern District of Ohio would have subject-matter jurisdiction because Corman's claims arise under Title VII and the FLSA, *see* 28 U.S.C. § 1331, and Defendant maintains its principal place of business and headquarters in Columbus, Ohio. (Doc. No. 11 at 2-3). Thus, Defendant is subject to personal jurisdiction in the Southern District of Ohio. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted).

Venue also would be proper there. Corman's FLSA claim is governed by 28 U.S.C. § 1391(b). Generally speaking, venue is proper in a district where the defendant resides or where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2). Defendant's principal place of business is in Columbus and many of the events underlying Corman's claims occurred there. (Doc. No. 14 at 6). Thus, the Southern District is a proper venue for Corman's FLSA claim. *See* 28 U.S.C. § 1931(c)(2).

Title VII permits plaintiffs to bring a claim in the judicial district "in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Defendant stores emails and other records relevant to Corman's Title VII claims on its Columbus servers. (Doc No. 14 at 8-9). Thus, the Southern District is a proper venue for both of Corman's claims, and she could have brought this action there.

Having resolved this "threshold" issue, I turn to the relevant § 1404(a) factors.

## B. PLAINTIFF'S CHOICE OF FORUM

Generally, a plaintiff's choice of forum is given significant weight. *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887 (N.D. Ohio 1999) (further citations omitted). "This is especially true where the plaintiff also resides in the chosen forum." *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008) (citation omitted). But "[w]hen the cause of action has little connection with the chosen forum, the plaintiff's choice of forum is to be given less weight than such choice would be given otherwise." *DRFP, LLC v. Republica Bolivariana De Venez*, 945 F. Supp. 2d 890, 902 (S.D. Ohio 2013) (citation and quotation marks omitted) (alteration by *DFRP, LLC*).

Defendant argues that this case has little connection to the Northern District, noting that Defendant made all its financial decisions, maintained and implemented financial policies, and processed payroll in Columbus. (Doc. No. 16 at 9). Corman also directed all her work and relevant communications associated with her claims to the Columbus location. (*Id.*). Thus, Defendant asserts that Corman's work had no connection to the Northern District, and her choice of forum should be given less deference. (*Id.* at 9-10).

Defendant does not stop there, but disputes the burden required to overcome Corman's choice of forum. (Doc. No. 14 at 5). Defendant argues that it need only show that the balance of factors *favor* transfer – not that the balance of factors leans *strongly in favor* of transfer. (Doc No. 14 at 5, 13) (emphasis added). *See also Armco, Inc. v. Reliance Nat'l Ins. Co.*, No. C-1-96-1149, 1997 WL 311474, at *4 (S.D. Ohio May 30, 1997).

Corman responds that Defendant's burden to overcome her choice of venue "is a colossal one," noting that the Sixth Circuit has held that transfer to a district other than the plaintiff's chosen venue should occur only when "the balance of all relevant factors [ ] weigh strongly in favor of transfer." (Doc. No. 15 at 12). *See also Nicol v. Kosinski*, 188 F.2d 537, 537 (6th Cir. 1951).

The "strongly in favor" standard traces back to the Supreme Court's decision in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). There – addressing dismissal under the common-law doctrine of forum non conveniens – that court stated, "unless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* After the enactment of § 1404 – relying on *Gulf Oil* and the forum non conveniens doctrine – the Sixth Circuit adopted the "strongly in favor" standard for evaluating motions to transfer venue under that statute. *See Nicol*, 188 F.2d at 537.

The Supreme Court later explained that § 1404(a) was not simply a codification of the forum non conveniens doctrine. *Norwood*, 349 U.S. 29, 31 (1955). Congress enacted that statute to give district courts broader authority to transfer cases for the convenience of the parties and witnesses, and in the interest of justice. *Id.* at 31-32. Although the factors identified in *Gulf Oil* remain relevant, § 1404(a) permits transfer upon a lesser showing of inconvenience than would be necessary to dismiss an action under forum non conveniens. *Id.* at 32.

Since then, courts have differed in describing the burden imposed on a party seeking transfer. Some have concluded that – after *Norwood* – the moving party need show only that the factors "favor" transfer. *See, e.g.*, *Roberts Metals, Inc., v. Fla. Properties Mktg. Grp. Inc.,* 138 F.R.D. 89, 92-93 (N.D. Ohio 1991); *Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 272 (S.D. Ohio 1981); *Armco*, 1997 WL 311474, at *4; *Jamhour v. Scottsdale*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002) (holding that under *Norwood*, "transfers pursuant to Section 1404(a) may be granted upon a lesser showing of inconvenience" than under forum non conveniens) (citation and quotation marks omitted).

Others continue to apply *Nicol* and require the balance to weigh "strongly in favor" of transfer before disturbing the plaintiff's chosen forum. *See, e.g.*, *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (affirming district court denial of motion to transfer under 1404(a) after

district court applied "strongly in favor" standard); *First Fin. Bank*, 697 F. Supp. 3d at 737; *Smith v. Swaffer*, 566 F. Supp. 3d 791, 801 (N.D. Ohio 2021); *Dayton Superior Corp. v. Yan*, 288 F.R.D 151, 165-66 (S.D. Ohio 2012); *Genesis Ins. Co. v. Alfi*, 425 F. Supp. 2d 876, 897-98 (S.D. Ohio 2006); *Cinemark*, 66 F. Supp. 2d at 887; *Picker Int'l,* 35 F. Supp. 2d at 573 (N.D. Ohio 1998); *Douglas v. Mod. Aero, Inc.*, 954 F. Supp. 1206, 1208 n.2 (N.D. Ohio 1997).

In any event, I need not resolve that disagreement here. Even under the more demanding standard urged by Corman, for the reasons detailed below, the balance of factors in this case strongly favor transfer.

## C. Convenience of the Parties

Defendant argues that the convenience of the parties favors transfer. (Doc. No. 14 at 6-11). I disagree.

"Transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich 2002). Corman resides in the Northern District, (Doc. No. 11 at 2), while Defendant maintains its headquarters and principal place of business in Columbus. (*Id.* at 2-3). (Doc. No. 11 at 15); (Doc. No. 14 at 13). Litigating in the Northern District is therefore more convenient for Corman, while litigating in the Southern District is more convenient for Defendant.

But the convenience of counsel generally receives little to no weight under § 1404(a). *Tanyike v. United States*, 603 F. Supp. 3d 572, 583 (S.D. Ohio 2022) (further citations omitted). Moreover, neither party identifies any unusual hardship associated with litigating in the other district. Corman does not claim that traveling to Columbus would create a significant financial, medical, caregiving, employment-related or other burden. And Defendant's principal claim of inconvenience concerns inconvenience of the witnesses – not the inconvenience of the parties themselves.

Because neither party has shown that litigating in the other district would impose a substantial burden, the convenience of the parties is neutral.

**D. Convenience of the witnesses**

"The convenience of the witnesses is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)." *First Fin. Bank*, 697 F. Supp. 3d at 738 (citation and quotation marks omitted). This is particularly true when the witness is a non-party witness. *See Steelcase Inc. v. Smart Techs.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004). The convenience of employee witnesses generally receives less weight. *Zimmer*, 478 F. Supp. 2d at 991. That said, employee convenience remains relevant, particularly when several employees might be called and their attendance in another city could disrupt operations. *See Wayne Cnty. Emps' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009) (citing *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 401 (S.D.N.Y. 1998)).

Courts will consider the materiality of the witnesses' anticipated testimony, the practical burden of attending trial, and the court's ability to compel unwilling witnesses to attend proceedings. *See Eberline v. Ajilon LLC*, 349 F. Supp. 2d 1052, 1054 (N.D. Ohio 2004). A district court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Hefferan*, 828 F.3d at 498 (citation and quotation marks omitted).

Defendant identifies several witnesses, all of whom are located in the Columbus area. (Doc. No. 14 at 8, 10). Its Chief Financial Officer and bookkeepers work out of the Columbus location. (*Id.* at 8). These current employees can testify to Defendant's financial policies, reports, and procedures, the computation and processing of payments to its employees and independent

contractors, and the hours Corman reported working. (*Id.* at 8-9). Such testimony would be material to defending against Corman's FMLA claims.

Defendant also identifies several Columbus-based nonparty witnesses. (*Id.* at 10). These witnesses will testify regarding Corman's alleged history of romantically pursuing Defendant's employees and independent contractors, and the alleged flirtatious behavior she directed towards Mitchell. (*Id.*). Defendant also may call Columbus police officers who responded to an altercation at its headquarters involving Corman and Defendant's contractor, with whom she allegedly had a romantic relationship. (Doc. No. 16 at 5). Assuming this testimony is admissible, it is material to Defendant's defense against Corman's Title VII claims because it could show that Corman at times encouraged flirtatious behavior at work and that Mitchell's advances may not have been unwelcome. *See B.E. Tech., LLC v. Groupon, Inc.*, 957 F. Supp. 2d 939, 944 (W.D. Tenn. 2013) ("It is the materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses, that is crucial to this inquiry.") (citation and quotation marks omitted).

Corman responds that Defendant has not identified these witnesses with sufficient specificity. (Doc. No. 15 at 14-15). She argues that Defendant lists only a "faceless corporate entity and vague, phantom 'witnesses.'" (*Id.* at 15). Corman asserts that Defendant must not only identify its witnesses, but must also submit affidavits or other concrete evidence indicating that these witnesses are unwilling to testify in the Northern District. (*Id.*). She further contends that Defendant has failed to show that these witnesses will be inconvenienced if the case proceeds in the Northern District. (*Id.* at 14).

The Sixth Circuit has held that a moving party is not required to produce the names of witnesses to establish inconvenience. It is sufficient for a defendant to "provide[ ] enough information to enable the trial court to balance the parties' interests." *Dowling v. Richardson-Merrell,*

*Inc.*, 727 F.2d 608, 615 (6th Cir. 1984) (assessing inconvenience under the forum non conveniens doctrine) (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 267 (1981)). Defendant has done so here.

More importantly, the burdensomeness comparison between the two forums is not close. Every identified potential witness other than Corman lives or works in the Columbus area. Corman identifies no expected witness in the Northern District. Columbus therefore would be the more convenient venue for the employees and nonparties expected to testify to the central issues in both the FLSA and Title VII claims. Unlike cases in which transfer merely shift inconvenience from one group of witnesses to another, there is no countervailing group of Toledo-based witnesses here. *See U.S. Fid. & Guar. Co.* v. *Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1081 (E.D.N.Y. 1992) (granting transfer to district where the majority of material witnesses resided); *see also Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991) (holding that transfer was favored because all non-party witnesses other than the plaintiff and his doctors lived in transferee district).

Defendant correctly notes that many of its non-party witnesses are beyond this Court's 100-mile subpoena radius. (Doc. No. 14 at 10). If Toledo is more than 100 miles from where these witnesses live, work, or regularly conduct business, they ordinarily could not be required to attend depositions here. *See* Fed. R. Civ. P. 45(c)(1)(A). Corman argues that these witnesses could be deposed closer to Columbus, and that their deposition testimony could be used at trial. (Doc. No. 15 at 17). But the court's preference for live testimony is a "relevant consideration" when weighing the convenience of non-party witnesses. *Kyphon,* 578 F. Supp. 2d at 963 (M.D. Tenn. 2008).

Requiring nearly the entire witness pool to travel to Toledo would create a considerable collective burden. Trying the case in Columbus would reduce travel, simplify scheduling, and limit the disruption caused by requiring several of Defendant's current employees to attend proceedings in another city. It would also make the presentation of live, material testimony more practical for

the former employees, contractors, and police officers who are not under Defendant's control. Thus, I conclude that this factor leans in favor of Defendant.

### E. Locus of operative facts

The locus of the operative facts is the place where the events underlying the parties' claims and defenses are centered. *See Bluecross Blueshield of Tenn., Inc. v. Dunwoody Labs, Inc.*, No. 1:20-cv-167, 2021 WL 6275252, at *11 (E.D. Tenn. Mar. 8, 2021) ("In the context of § 1404(a), the locus of operative facts is described as the location where the case finds its center of gravity, where the vast majority of the events in question took place, or where the primary events which gave rise to the alleged wrongs occurred.") (citations and quotation marks omitted). "A fundamental principle guiding the Court's analysis is that litigation should proceed in that place where the case finds its center of gravity." *Audi AG and Volkswagen of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 751 (E.D. Mich. 2004) (citation and quotation marks omitted).

Defendant argues that the Southern District is the center of this case. (Doc. No. 14 at 11). It maintains its headquarters in Columbus, where it formulates and implements its financial policies, processes payroll, and keeps records related to timekeeping and payroll. (Doc. No. 16 at 9). Columbus, Ohio is where Corman directed all her work – regardless of where she was living – as well as all communications associated with her FLSA and Title VII claims. (*Id.*). Moreover, all witnesses and evidence relating to Corman's claims are in Columbus. (Doc. No. 14 at 6, 11). Defendant notes that many of the events giving rise to this litigation occurred in other states and asserts that the connections between this litigation and the Northern District are mere happenstance. (*Id.* at 11). According to Defendant, these facts place the events underlying Corman's claims in the Southern District. (*Id.*).

Corman responds that the Northern District is the center of the dispute because she worked remotely from Toledo for four months. (Doc. No. 15 at 21). She alleges that she performed a

significant amount of uncompensated overtime work while in Toledo. (*Id.*). Corman notes that Defendant has failed to identify any uncompensated work she performed while physically present in Columbus. (*Id.*). She also alleges that some of Mitchell's sexual advances occurred while she worked in Toledo. (*Id.* at 22). Corman further contends that she was excluded from meetings, and was subject to hostility, retaliation, and termination while living there as well. (*Id.*).

The Northern District has some connection to events giving rise to this litigation. But Corman's physical location while working remotely is only part of the analysis. Her claims must be weighed against multistate nature of her employment and where Defendant administered its policies and conducted business.

To that end, the events underlying Corman's claims lean towards Columbus. Defendant formulated and administered its financial policies there, processed Corman's payroll, and maintained her timekeeping and compensation records there. (Doc. No. 14 at 6-7). The witnesses and corporate officers with knowledge of those matters work in Columbus. (*Id.* at 8). Although Corman alleges that she performed a portion of her uncompensated work while living in Toledo, (Doc. No. 15 at 21), the practices that allegedly caused the underpayment were administered by Defendant's Columbus headquarters. (Doc. No. 14 at 8). And Corman directed all her completed work and relevant communications concerning her Title VII claims to Columbus. (*Id.* at 9-11); (Doc. No. 16 at 9).

On balance, I conclude the events giving rise to Corman's claims lean slightly in favor of transfer.

### F. LOCATION OF EVIDENCE

Defendant also asserts that the evidence relevant to Corman's claims is in Columbus. (Doc. No. 14 at 8-9). Its servers contain Corman's payroll and timekeeping records, documents concering its financial policies and procedures, bookkeeping records, and email communications related to her

Title VII claims. (*Id.* at 9-10). Defendant contends that resolving Corman's claims will require a forensic examination of its network and computer systems – systems located in Columbus – to determine whether Corman reported all the hours she allegedly worked.[1] (Doc. No. 16 at 7).

Corman notes that Defendant points to documentary evidence and not physical evidence, and she contends Defendant does not represent that it has an abnormally large number of documents that would be difficult to deliver electronically. (Doc. No. 15 at 18).
She argues that considering advancements in technology, documentary evidence is not burdensome to transport and thus should be given very little weight. (*Id.*).

True, modern electronic discovery has reduced the importance of where documents and servers happen to be located. Accordingly, modern courts have given this factor less weight. *See First Fin. Bank*, 697 F. Supp. 3d at 739. That said, less weight does not mean no weight. *See B.E. Tech.*, 957 F. Supp. 2d at 948 (rejecting the notion that advances in electronic documentation reduce the importance of this factor) (*citing In re Link-A-Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011) ("While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely.")).

Corman does not identify any comparable evidence in the Northern District. Any relevant evidence that exists – documentary or otherwise – is in the Southern District. Thus, to the extent that this factor carries any weight – even minor weight – it leans in favor of transfer.

---

[1] The possible need for a forensic examination does not materially change my analysis. Even if an examiner must access Defendant's computer systems in Columbus to conduct a forensic investigation, any relevant information would presumably be preserved and produced electronically. Defendant has not shown that the systems themselves – or any other physical evidence – would have to be transported to Toledo for inspection at trial.

### G. PUBLIC INTEREST CONSIDERATIONS

Courts must also consider the public interests bearing on the "interests of justice." *Stewart*, 487 U.S. 22 at 30. These interests include "systemic integrity and fairness." *Moses*, 929 F.2d at 1137. Courts look to:

> (1) the enforceability of the judgment; (2) practical considerations affecting trial management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law.

*Kyphon*, 578 F. Supp. 2d at 962.

Most of these factors are neutral. Any judgment would be equally enforceable in either district, judges in both districts are equally familiar with the federal law governing Corman's claims, and neither party identifies a meaningful difference in docket congestion. The parties focus instead on which district has the stronger local interest in the controversy. (Doc. No. 14 at 11-12); (Doc. No. 15 at 22).

There is "value [in] holding trial in a community where the public affected live." *See Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 856 (S.D. Ohio 2007) (citations and quotation marks omitted). Defendant asserts that the Southern District is "the only judicial district with a legitimate interest in resolving a dispute concerning the conduct of a local party." (Doc. No. 14 at 11). Defendant argues that the "the only connection the Northern District of Ohio has to this case is that [Corman] happened to be working remotely in Toledo when she suffered some of the consequences of [Defendant's] alleged actions." (*Id.*). Defendant contends the same could be said for the Middle District of Florida, the District of Arizona, and the District of Nevada. (*Id.*).

Defendant, on the other hand, continues to house its headquarters in Columbus. (Doc. No. 16 at 10). And the majority of its employees continue to work in Columbus. (*Id.*). Defendant argues that if a jury finds it – or its employees – engaged in discriminatory conduct, the Columbus management team will be accountable for that conduct. (*Id.*). *See also Wayne v. Fuji Photo Film USA,*

*Inc.*, No. 07-CV-5536, 2008 WL 3832406, at *4 (E.D. Penn. Aug. 14, 2008) (concluding New Jersey's interest in holding New-Jersey based employers accountable for discriminatory conduct in New Jersey weighed in favor of transfer).

Corman responds that the Northern District has a substantial interest in litigating her claims because she lived and worked in Toledo and experienced unlawful conduct and injury there. (Doc. No. 15 at 21). She asserts that there is no connection between the Southern District and her Title VII claims. (*Id.* at 22). Moreover, Corman argues that Title VII's venue provision reflects a public interest in allowing those claims to be heard in the community connected to the alleged discrimination. (*Id.*). *See also Kyphon*, 578 F. Supp. 2d at 968-69.

I find that both the Northern and Southern District have a legitimate stake in resolving this controversy. The Northern District's interest arises from the work Corman performed and the alleged injuries she experienced while living in Toledo. The Southern District's interest arises from the location of Defendant's headquarters, the employment and compensation practices administered there, and the conduct of its Columbus-based employees. Neither district's connection is merely incidental. The action concerns not only an injury allegedly experienced in Toledo, but also the practices and conduct of a business operating in Columbus.

Because both districts have a meaningful connection to the controversy, neither has a superior public interest in resolving it. Thus, I conclude that the local-interest factor is neutral.

### H. BALANCING OF THE FACTORS

I conclude that, taken together, the factors strongly weigh in favor of transfer to the Southern District. Requiring Defendant to litigate this case in the Northern District of Ohio would be unnecessarily burdensome to nearly all of the witnesses who may be called at trial. While Corman's choice of forum deserves some deference, it is outweighed by the convenience of material

witnesses in Columbus, the Southern District's stronger connection to the operative facts, and the location of all relevant evidence.

## V. CONCLUSION

For the reasons stated above, I grant Defendant Relax Sauna's motion to transfer. (Doc. No. 14). Thus, I hereby transfer this case to the Southern District of Ohio, pursuant to 28 U.S.C. § 1404(a).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge